**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| |
|---|
| WILLIAM R. PARTIN, M.D., |
| *Plaintiff,* |
| v. |
| BAPTIST HEALTHCARE SYSTEM, INC. d/b/a BAPTIST HEALTH FLOYD Serve:  Katie Wells, Registered Agent 1850 State Street New Albany, IN 47150 |
| and |
| DANIEL J. EICHENBERGER, M.D., 2400 East 17th Street Columbus, IN 47201 |
| *Defendants.* |

Case No. 4:20-cv-185

## COMPLAINT AND DEMAND FOR JURY TRIAL

Dr. William R. Partin, M.D. ("Dr. Partin"), by and through counsel, for his Complaint against Baptist Healthcare System, Inc. d/b/a Baptist Health Floyd and Daniel J. Eichenberger, M.D., states as follows:

## INTRODUCTION

1.      This action arises out of Defendants' retaliation against Dr. Partin in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and Indiana law.

2.      Dr. Partin has been a board-certified emergency medical physician for more than two decades. For most of that time, he served in the emergency department at Baptist

1

Health Floyd. In September 2019, the Hospital and its president, Dr. Eichenberger, unlawfully removed Dr. Partin as a physician at the Hospital in retaliation for his reporting of EMTALA violations and his refusal to violate EMTALA.

3.      The actions of the Hospital and Eichenberger have severely damaged Dr. Partin. He seeks compensatory, punitive, and other damages from the Hospital and Eichenberger for their unlawful conduct.

## PARTIES

4.      Dr. Partin is a citizen and resident of Prospect, Kentucky. He was a hospital employee within the meaning of the statute

5.      Defendant Baptist Healthcare System, Inc. d/b/a Baptist Health Floyd (the "Hospital") is a Kentucky corporation with its principal office at 2701 Eastpoint Parkway, Louisville, KY 40223. It is a participating hospital for purposes of EMTALA.

6.      Daniel J. Eichenberger is a citizen and resident of Indiana. At all relevant times herein, he was acting in his capacity as President and employee of the Hospital.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.      The Court may properly exercise personal jurisdiction over both Defendants because they reside or conduct business within Indiana, and the acts or omissions giving rise to the claims occurred in Indiana.

9.     Venue is proper in this Court pursuant to U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to the claims occurred in the Southern District of Indiana.

## FACTS

10.     For nearly 20 years, Dr. Partin practiced as a shareholder and employee of Floyd Emergency Medicine Associates, PC ("FEMA"), a physician-owned private practice of emergency medicine physicians in New Albany, Indiana. Dr. Partin's employment at FEMA was subject to an Employment Agreement. (*See* Ex. A.)

11.     Since approximately 1978, FEMA has had a written contract (the "Exclusive Provider Agreement") to serve as the exclusive provider of emergency medicine services at the Hospital. The Hospital is located in New Albany, Indiana. The physicians of FEMA, including Dr. Partin, were intended beneficiaries of the Exclusive Provider Agreement.

12.     At all times during his employment with FEMA, Dr. Partin maintained medical staff privileges at the Hospital, where he served as a full-time member of the medical staff. As a member of the medical staff, Dr. Partin's relationship with the Hospital is subject to the Medical Staff Bylaws (the "Bylaws"), a binding contract which prescribes, among other things, certain due process requirements that must precede the removal of a physician from the medical staff. Among other things, Article VIII of the Bylaws entitles a medical staff member to a hearing and appeal process prior to removal from the medical staff.

13.     During his tenure on the medical staff, Dr. Partin was never subjected to adverse action against his privileges. In his bi-annual reappointments to the medical staff in 2016 and 2018, the reappointment papers state explicitly that there have been "no concerns regarding [Dr. Partin's] clinical competency" and that Dr. Partin had attained the highest

possible rating for "interpersonal and communication skills." Dr. Partin was not scheduled for another bi-annual evaluation and reappointment of his privileges until mid-2020.

14.     On September 19, 2019, FEMA received a letter from Eichenberger in which the Hospital and Eichenberger demanded that FEMA remove Dr. Partin as a provider at the Hospital pursuant to Section 1(e) of FEMA's Exclusive Provider Agreement. That clause states that the Hospital may require FEMA to remove a physician who "fails to comply with…the written policies and procedures of Hospital…after being given notice of his failure to comply." (See Exhibit B, Termination Letter.) Dr. Partin had been given no notice of his alleged failure to comply with any written policies and procedures of the Hospital. The Termination Letter noted that Dr. Partin would be given no due process under the Bylaws.

15.     Eichenberger claimed in the Termination Letter that Dr. Partin had exhibited "disruptive behavior" at the Hospital. This was a sham allegation lacking in factual support and made in bad faith. As noted above, the Hospital had repeatedly stated that there have been "no concerns regarding [Dr. Partin's] clinical competency" and that Dr. Partin had the highest rating for "interpersonal and communication skills."

16.     Eichenberger then claimed Dr. Partin had violated Hospital policies in "refusing to accept appropriate transfers and treatment and care for and on behalf of patients who are placed on a 72 hour hold." (see Ex. B, Termination Letter.) Eichenberger failed to provide factual support for this conclusory allegation, because none exists. Moreover, the conclusory allegation fails to identify any written policies or procedures of the Hospital that had been violated by Dr. Partin. Dr. Partin had been given no notice of any such alleged violation.

17.     On information and belief, the Termination Letter was sent in retaliation for Dr. Partin's refusal to violate EMTALA and his reporting of EMTALA violations based on a patient encounter in early September.

18.     In early September 2019, a suicidal patient in serious need of emergency medical and psychological treatment arrived in the Hospital's emergency department. Members of the Hospital staff refused to perform an initial medical screening examination; sought to transfer or discharge the patient without first stabilizing her emergency medical condition, in violation of EMTALA; and encouraged the patient to leave the Hospital, in violation of EMTALA. The Hospital's plan to discharge the patient also was in violation of the Hospital's own rules and regulations which state, in pertinent part, that "[p]atients who are suspected to be suicidal, emotionally ill, become emotionally ill while in the hospital, or who suffer the results of alcoholism or substance abuse, will be medically stabilized, and then transferred, if necessary, to an appropriate facility as determined by the attending physician." The Hospital's rules and regulations also acknowledge that the actions of Hospital staff in "encouraging [the] patient to leave on his or her own – is considered a 'transfer' under EMTALA."

19.     Dr. Partin insisted on treating the patient and refused to discharge or transfer her in unstable condition. Dr. Partin reported the other staff members' unwillingness to treat and stabilize the patient to Eichenberger. Dr. Partin communicated to Eichenberger that he refused to discharge or transfer the patient in unstable condition. Because of Dr. Partin's refusal to violate EMTALA, the patient was admitted to the Hospital that night, but was permitted to leave against medical advice the very next day—after Dr. Partin's shift had

ended—indicating that it was the Hospital's intention all along to discharge the patient as soon as possible.

20.     Eichenberger and the Hospital disapproved of Dr. Partin's reporting of EMTALA violations and his refusal to violate EMTALA with respect to that patient. Eichenberger's demand that FEMA remove Dr. Partin from the Hospital was an act of retaliation against Dr. Partin for his reporting EMTALA violations and refusal to violate EMTALA. In the past, Eichenberger had expressed frustration over psychiatric and intoxicated patients being admitted to the Hospital through the emergency department rather than being immediately transferred to psychiatric centers.

21.     Eichenberger also harbored ill will and malice against Dr. Partin for Dr. Partin's role in criticizing an ineffective electronic medical records (EMR) system that Eichenberger and the Hospital implemented years earlier. The ineffective EMR system was eventually replaced, but Eichenberger continued to harbor ill will and malice toward Dr. Partin because of this.

22.     The Termination Letter threatened that if FEMA refused to terminate Dr. Partin, then the Hospital would exercise its right to terminate FEMA's Exclusive Provider Agreement, which would effectively destroy the livelihood of all the physicians and other employees in FEMA. The Hospital and Eichenberger resorted to severe economic coercion against FEMA because of the absence of any factual basis for the allegations against Dr. Partin. On information and belief, the Hospital and Eichenberger intentionally avoided presenting any alleged concerns about Dr. Partin to the Medical Staff pursuant to the process outlined in the Bylaws, because they knew there was no basis for adverse action against Dr. Partin under the Bylaws and that the Medical Staff would not have taken action against him.

6

23. After receiving the Termination Letter, representatives of FEMA met with Eichenberger and other Hospital administrators to discuss whether the matter could be resolved without terminating Dr. Partin. FEMA asked if Partin could attend the meeting, but Eichenberger refused to discuss the matter with FEMA if Partin was involved in any way. At the meeting, Eichenberger and the Hospital remained intransigent, stating point blank that the Hospital would not reconsider its decision.

24. After that meeting on September 20, FEMA informed Dr. Partin that FEMA had decided to terminate him as of October 1, 2019. Physicians in FEMA informed Dr. Partin that FEMA would not have terminated him but for the ultimatum of the Hospital and Eichenberger threatening the loss of FEMA's Exclusive Provider Agreement with the Hospital. Because his employment agreement provided for 60 days notice for a termination of the agreement without cause, the effective date of his termination was December 1, 2019.

25. As a result of the Hospital's and Eichenberger's unlawful actions against Dr. Partin, the Hospital contended that Dr. Partin's medical staff privileges automatically terminated under the Exclusive Provider Agreement, which states that, "if any physician…is removed pursuant to [the Hospital's request]…then the medical staff membership and privileges of the physician…shall automatically terminate, without notice, hearing, or right to appeal…" The Hospital deemed Dr. Partin's medical staff privileges terminated as of December 1, 2019, thus depriving Dr. Partin of all due process under the Bylaws, with no legal justification for doing so.

26. But for the unlawful actions of the Hospital and Eichenberger, Dr. Partin would have continued working at the Hospital with FEMA for at least 20 more years. By causing the termination of his Employment Agreement with FEMA, the termination of his rights

under the Exclusive Provider Agreement, and the termination of his medical staff privileges, Eichenberger and the Hospital inflicted substantial hardship and harm upon Dr. Partin.

27.     Dr. Partin's damages include but are not limited to: the loss of his employment with FEMA, resulting in lost past and future income; the loss of his contractual rights under the Exclusive Provider Agreement, resulting in lost past and future income; the loss of his medical staff privileges at the Hospital, resulting in lost past and future income; severe emotional distress; damage to reputation; and other consequential damages.

## COUNT I: EMTALA WHISTLEBLOWER RETALIATION

28.     Dr. Partin incorporates by reference Paragraphs 1 through 27 of this Complaint as if fully set forth herein.

29.     Hospital emergency departments are legally required to examine each patient to determine whether an emergency medical condition exists. 42 U.S.C. § 1395dd (a). If the examination reveals the patient is suffering from an emergency medical condition, the hospital must stabilize the patient before discharging or transferring the patient. A hospital that either fails to properly screen a patient, or releases a patient without first stabilizing his or her emergency medical condition thereby violates EMTALA.

30.     The statute contains a whistleblower provision precluding a hospital from taking adverse action against a physician who (*i*) "refuses to authorize the transfer of an individual with an emergency medical condition that has not been stabilized," or (*ii*) "reports a violation" of EMTALA requirements. 42 U.S.C. § 1395dd(i).

31.     The Termination Letter was sent in retaliation for: (1) Dr. Partin's refusal to transfer or discharge a patient whose emergency condition had not been stabilized; and (2) Dr. Partin's reporting of violations of EMTALA.

32.     Dr. Partin was a physician and employee within the meaning of the statute and was engaged in conduct protected by 42 U.S.C. § 1395dd(i).  The Hospital and Eichenberger subsequently took adverse action against Dr. Partin on the basis of the protected conduct, requiring termination of Dr. Partin's medical staff privileges, his employment at FEMA, and his rights under the Exclusive Provider Agreement. The Hospital's retaliatory actions violated EMTALA's whistleblower provision. 42 U.S.C. § 1395dd(i).

33.     Dr. Partin was damaged as a result of the actions of the Hospital and Eichenberger.

### COUNT II: BREACH OF CONTRACT (MEDICAL STAFF BYLAWS)

34.     Dr. Partin incorporates by reference Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35.     The Bylaws, which constitute a binding contract between Dr. Partin and the Hospital, prescribe a review process for evaluating quality of care issues and for terminating medical staff privileges.

36.     Dr. Partin has performed all of his obligations under the Bylaws.

37.     The Hospital materially breached its duties under the Bylaws by terminating Dr. Partin's medical staff privileges without adhering to any of the Bylaws' prescribed processes for doing so.

38.     The Hospital's breach of the Bylaws deprived Dr. Partin of access to his patients and destroyed his ability to sustain his livelihood, thereby causing him substantial financial harm.

39.     Dr. Partin has been damaged as a result of the Hospital's actions.

### COUNT III: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING (MEDICAL STAFF BYLAWS)

40.     Dr. Partin incorporates by reference Paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41.     An implied covenant of good faith and fair dealing attaches to every contract and requires all parties to the contract (*i*) to do everything necessary to carry out both the letter and the spirit of the contract and (*ii*) not to engage in any conduct that would deprive the other party of the benefits of the contract. The covenant of good faith and fair dealing is violated, among other things, when a party commits acts that evade the spirit of the bargain, willfully renders imperfect performance, abuses a discretionary power, or interferes with or fails to cooperate with another party's performance.

42.     The Bylaws, which constitute a binding contract between Dr. Partin and the Hospital, contain an implied covenant of good faith and fair dealing.

43.     The Bylaws prescribe a review process for evaluating quality of care issues and for terminating medical staff privileges.

44.     The Hospital and Eichenberger evaded this review process in bad faith and through improper and unlawful attempts to use the Exclusive Provider Agreement to terminate Dr. Partin from the medical staff.  In doing so, the Hospital and Eichenberger deprived Dr. Partin of the benefits of a contract to which he is a party.

45.     The Hospital and Eichenberger knew and reasonably foresaw that such violations would destroy Dr. Partin's ability to sustain his livelihood, thereby causing substantial financial harm.

46.     Dr. Partin has been damaged as a result of the Hospital's actions.

**COUNT IV: BREACH OF CONTRACT (EXCLUSIVE PROVIDER AGREEMENT)**

10

47.     Dr. Partin incorporates by reference Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48.     FEMA had an Exclusive Provider Agreement with Hospital of which Dr. Partin was an intended beneficiary.

49.     The Hospital materially breached the Agreement by purporting to remove Dr. Partin from the emergency department service in violation of the Agreement.

50.     Dr. Partin has been damaged as a result of the Hospital's actions.

## COUNT V: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS (EMPLOYMENT AGREEMENT)

51.     Dr. Partin incorporates by reference Paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52.     The Employment Agreement between Dr. Partin and FEMA is a valid and enforceable contract. The Hospital was aware of the contractual relationship between Dr. Partin and FEMA as well as the prospective continued contractual relationship between Dr. Partin and FEMA.

53.     Eichenberger and the Hospital induced the termination of Dr. Partin's contract with FEMA.

54.     The inducement was unjustified because, among other things, it was accomplished through undue economic coercion and threats of financial ruin against FEMA; through defamatory statements about Dr. Partin in the Termination Letter; through retaliatory acts in violation of EMTALA and Indiana law; without legal or factual grounds under the Exclusive Provider Agreement; in bad faith to avoid the process in the medical staff bylaw; and based on ill will and malice against Dr. Partin.

55.     Dr. Partin was damaged as a result of the actions of the Hospital and Eichenberger.

## COUNT VI: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

56.     Dr. Partin incorporates by reference Paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.     The business relationship between Dr. Partin and his patients is valid and is borne out of Dr. Partin's many years of goodwill and quality patient care.

58.     The Hospital and Eichenberger were unquestionably aware of these relationships.

59.     The Hospital and Eichenberger, acting on the Hospital's behalf, intentionally interfered with those relationships by acting to remove Dr. Partin from performing emergency medical services at the Hospital, thereby cutting off Dr. Partin's ability to treat patients.

60.     The interference was unjustified because, among other things, it was accomplished through undue economic coercion and threats of financial ruin against FEMA; through defamatory statements about Dr. Partin in the Termination Letter; through retaliatory acts in violation of EMTALA and Indiana law; without legal or factual grounds under the Exclusive Provider Agreement; in bad faith to avoid the process in the medical staff bylaw; and based on ill will and malice against Dr. Partin.

61.     Dr. Partin was damaged as a result of the actions of the Hospital and Eichenberger.

## COUNT VII: DEFAMATION PER SE

62.     Dr. Partin incorporates Paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.     In his letter to FEMA, Eichenberger represented that Dr. Partin had engaged in persistent "disruptive behavior" that "undermine[d] a culture of patient safety" and "create[ed] tension, hostility and an inappropriate work environment." Furthermore, Eichenberger specifically accused Dr. Partin of "refusing to accept appropriate transfers" and treating "patients who are placed on a 72 hour hold" in a manner that is "contrary to the Hospital's policies." Each of these statements is false and defamatory.

64.     Eichenberger published the statements to all of Dr. Partin's fellow shareholders and employees within FEMA and to others within the Hospital.

65.     Eichenberger knew that these defamatory allegations were false, acted with reckless disregard to their truth or falsity, or failed to exercise ordinary care in determining their truth or falsity before making the defamatory communication.

66.     Because the defamatory statements impute to Dr. Partin misconduct in his trade, profession, office, or occupation, the statements constitute defamation *per se*, and damages are presumed.

67.     In making the defamatory statements, Eichenberger was acting in the scope and course of his employment as President of the Hospital. Therefore, the Hospital is liable to Dr. Partin for Eichenberger's defamatory communication under *respondeat superior*.

68.     Dr. Partin was damaged as a result of the actions of the Hospital and Eichenberger.

**WHEREFORE**, Plaintiff Dr. William R. Partin, M.D., respectfully prays for relief as follows:

1.     An award for compensatory damages him for the loss of his employment with FEMA, resulting in lost past and future income; the loss of his contractual rights under the

Exclusive Provider Agreement, resulting in lost past and future income; the loss of his medical staff privileges at the Hospital, resulting in lost past and future income; severe emotional distress; damage to reputation; and other consequential damages;

2. An award for punitive damages;

3. His reasonable attorneys' fees, pre- and post-judgment interest, and costs;

4. Trial by jury; and

5. All other relief to which Dr. Partin may be entitled.

Respectfully Submitted,

*s/ Michael C. Merrick*
Michael C. Merrick
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main Street, 4th Floor
Louisville, KY 40202
Phone:(502) 242-9099
Fax: (502) 540-8282
mmerrick@kaplanjohnsonlaw.com
*Counsel for Plaintiff*